[No. 26041.   Department One.   February 28, 1936.]

PUBLIC UTILITY DISTRICT NO. 1 OF BENTON COUNTY,
*Respondent*, v. BENTON COUNTY *et al., Appellants.*[1]

*C. L. Holcomb,* for appellants.
*B. E. McGregor,* for respondent.

MITCHELL, J.—Public Utility District No. 1 of Benton County, Washington, is a regularly organized public utility district (hereinafter called utility district), the boundaries of which are co-extensive with the boundaries of the county.  In 1935, the utility district commission, at the time and in the manner required by law, did all things necessary to adopt, and did adopt, a budget for the year 1936, providing for the expenditure of $2,500, and levied a tax of three-tenths of one mill on the taxable property within the utility district to meet those expenditures.  The proceedings were regularly certified to the proper county officers in order that the levy might be spread upon the tax rolls of the county as utility district taxes and

[1]Reported in 54 P. (2d) 1011.

collected by the county officers, as required by law. The county officers refused to comply with the request and demand of the utility district.

The utility district thereupon brought this action in the superior court to compel the county officers to perform their duties with respect to spreading the levy on the rolls for the collection of the utility district's taxes.

Upon issues framed and a trial of the case, findings were entered in favor of the utility district. Judgment was entered upon the findings, directing the county officers to cause the levy certified by the utility district commission to be spread upon the tax rolls of the county forthwith, in the manner provided by law, in order that the funds might be available for the utility district's fiscal year of 1936. The defendants have appealed.

The contention on behalf of the appellants is that, at the time the certified tax levy of the utility district was received by the county officers, the *county commissioners* of the county had already levied ten mills on the taxable property of the county for *county purposes,* which was the limit allowed to the county under the provisions of chapter 2, Laws 1935, p. 8, Rem. 1935 Sup., § 11238-1a [P. C. § 6882-77b], commonly known as initiative No. 94.

First, the scope and purpose of the public utility district act, which was passed by popular vote, may be examined. It is found in chapter 1, Laws 1931, p. 3, Rem. Rev. Stat., §§ 11605-11616 [P. C. §§ 4498-11 to 4498-22], and authorizes the organization of public utility districts such as the respondent. By the terms of the act, such districts, when organized, become municipal corporations, and in area may be co-extensive with, or embrace a less area than, an entire county. Rem. Rev. Stat., §§ 11607, 11608 [P. C. §§ 4498-13,

4498-14]. Also, two or more contiguous public utility districts may be consolidated into one, with the possibility of the consolidated district embracing area in more than one county. Rem. Rev. Stat., § 11614 [P. C. § 4498-20].

The powers of a public utility district are exercised through a commission consisting of three members. Rem. Rev. Stat., § 11608 [P. C. § 4498-14].

The districts are given large powers, among them being the power

"To construct, condemn and purchase, purchase, acquire, lease, add to, maintain, operate, develop and regulate all lands, property, property rights, water, water rights, dams, ditches, flumes, aqueducts, pipes and pipelines, water power, leases, easements, rights of way, franchises, plants, plant facilities and systems for generating electric energy by water power, steam or other methods, plant, plant facilities and systems for developing, conserving and distributing water for domestic use and irrigation, buildings, structures, poles and pole lines, and cables and conduits and any and all other facilities, and to exercise the right of eminent domain to effectuate the foregoing purposes. . . ." Rem. Rev. Stat., § 11610, Sub. (b).

They are given power to raise revenue by the levy of an annual tax on all taxable property in the utility district. The utility district commission shall prepare and propose a budget for the ensuing year and file the same on or before the first Monday in September, give notice of the filing and of the day for hearing it, and, by resolution, adopt the budget as finally determined and fix the amount of expenditures for the ensuing year; and it is further declared and directed that:

"Taxes levied by the commission shall be certified to and collected by the proper county officer of the county in which such public utility district is located in the same manner as is or may be provided by law

for the certification and collection of port district taxes. . . ." Rem. Rev. Stat., § 11610, Sub. (g).

Initiative No. 94 relates to an entirely different matter. It does not conflict with the public utility district act. It is intended to limit the aggregate annual levies to forty mills for state, county, school district, road district, and city and town *purposes*. The title of the act is:

"An Act relating to the taxation of real and personal property and limiting the aggregate annual rate of levy thereon for state, county, municipal, school district and road district purposes to forty mills." Chapter 2, Laws of 1935, p. 8.

The annual tax levy by a public utility district, whatever the area of the district, is not embraced or mentioned in the title or the body of initiative No. 94.

The only kinds of taxes mentioned in initiative No. 94 are for state, county, school district, road district, and city and town *purposes*. A public utility district tax is neither of those kinds. The boards or officers levying taxes for the purposes mentioned in initiative No. 94 exercise *power and judgment* within the limitations therein expressed. They, or any of them, do not exercise any power or judgment with respect to the levying of taxes for a public utility district, nor do they levy such taxes. A public utility district's taxes are levied by its own commission, which taxes are to be certified to and collected by the proper county officer of the county in which the public utility district is located, in the same manner as the taxes of a port district are collected—only a *ministerial* act on the part of the county officers.

The judgment appealed from is affirmed.

Millard, C. J., Tolman, Steinert, and Geraghty, JJ., concur.